## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

|  |  |
|---|---|
| Harry Maddox III, | Case No. 20-cv-0645 (SRN/HB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Josh Sather, *RN-Nurse, Chisago Jail*; Sgt. Lucas Anderson, *Chisago County Jail, Badge No: 1358*; Sgt. Richard Benson, *Chisago County Jail, Badge No. 1343*; John Grey, *Assist-Admin, Chisago County Jail, Badge No. 1348*; Tracy Armistead, *Captain, Chisago County Jail, Badge No. 1015*; Sarah Johnson, *Inspection and Enforcement Unit, MN Department of Corrections*; Sandi Lehman, *Regional Nurse Manager (ACH) Advanced Correctional Healthcare*; Matthew J. Meskan,[1] *Assistant Regional Nurse Manager (ACH) Advanced Correctional Healthcare*; Gunnar Erickson, M.D. *Ophthalmology: Total Eye Care*; Michael Eichler, *M.D. Ophthalmology: Total Eye Care*; Ebenezer Tope Adebara, M.D. *Fairview Lakes Emergency Department*; Kathleen E. Karnowski, *Court Administrator*; Hon. Judge Suzanne Bollman, *Judge of Chisago District Court*; and Jacob Devermeyer, *Intake Officer, Chisago County Jail, Badge NO. 1327*, | |
| Defendants. | |

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on three motions: Defendants Gunnar Erickson, M.D.

---

[1] Defendant Meskan's name appears to have been incorrectly entered as Matthew J. Meslean on the Court's docket.

and Michael Eichler, M.D.'s Motion to Dismiss [ECF No. 23]; Defendants Josh Cather,[2]

Sandi Lehman, and Matthew J. Meskan's Rule 12(b)(6) Motion to Dismiss [ECF No. 38];

and Defendants Sgt. Lucas Anderson and Sgt. Richard Benson's Motion for Judgment on

the Pleadings [ECF No. 47].[3]  For the reasons described below, the Court recommends

granting all three motions.

## I.    BACKGROUND

Plaintiff Harry Maddox III has asserted numerous claims under 42 U.S.C. § 1983

against various individuals—both prison officials and private physicians—who allegedly

violated his constitutional rights while he was incarcerated at the Chisago County Jail.

(*See* Compl. [ECF No. 1].)  Maddox sues all Defendants in their individual and official

capacities.  (*Id.* at 1.[4])  He seeks injunctive relief and compensatory and punitive

damages.  (*Id.* at 12–14.)

---

[2]    Defendant Josh Cather is incorrectly named as "Josh Sather" in Plaintiff's Complaint.

[3]    While Anderson and Benson's *motion* is titled "Motion to Dismiss" and mentions both Federal Rule of Civil Procedure 12(b)(6) and Rule 12(c), it is docketed on CM/ECF as a Motion for Judgment on the Pleadings [ECF No. 47], and the accompanying brief is entitled Memorandum of Law in Support of Motion for Judgment on the Pleadings [ECF No. 49].  Furthermore, because Anderson and Benson filed an answer to the Complaint [ECF No. 46] before they filed their motion, they were precluded from bringing a motion to dismiss under Rule 12(b)(6).  *See* Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed.").  Accordingly, the Court will treat their motion as having been brought exclusively under Rule 12(c).  However, as noted *infra* at 10, the difference does not affect the legal standard by which the motion is evaluated.

[4]    The Complaint does not contain page numbers so all citations are to the pagination created by the CM/ECF system.

The factual basis for Maddox's claims varies, but it largely centers on the medical treatment he received while imprisoned. As relevant here, Maddox's Complaint also alleges he suffered racial discrimination, had his legal mail improperly opened, and had a handbook taken.

The Complaint was filed with several attachments, which include exchanges between Maddox and jail officials documenting various of Maddox's grievances. [ECF No. 1-1.] The Court considers these materials as intended to substantiate the allegations in the Complaint, but does not construe the claims in the grievance communications as stating allegations in addition to those set forth in the Complaint.

## A.    Eye-Related Complaints

After complaining of eye pain, Maddox was seen by Dr. Gunnar Erickson, a private physician at Total Eye Care, on December 28, 2019. (Compl. at 11.) Dr. Erickson diagnosed Maddox as having Aphakia OD, a dislocated lens in his right eye. (Compl. Ex. 7-X [ECF No. 1-1 at 7–8].) Dr. Erickson also prescribed Maddox Combigan® and Dorzolamide (*id.*), eye drops to help with high eye pressure.

Two days later, Plaintiff sent a message through the jail communication system to jail staff stating, in relevant part:

> now dr.gunnar prognosis is that maddox might lose sight permanently in right-eye because his eye lens and large cateracts which is posion is deatached some where inhis eye-ball and maddox needs immediate surgery by an specilist before infection prooceds to his left-eye which would leave Maddox totally-blind??? All because o improper- treatment from chisago medical staff

(Compl. Ex. 2-X [ECF No. 1-1 at 3].)  Two days later, Maddox sent another message

complaining, among other things, that he was "having an adverse reaction" to the eye

drops.  (*Id.* at 4.)  The next day Maddox sent a message stating he needed to go to the

hospital "for chest pains and swollen scrotum and penis due to adverse reaction to

medication," although it is unclear if Maddox intended to attribute that reaction to the eye

drops or another medication.  (*Id.* at 5.)  Later that day a member of the nursing team

responded to Maddox that they had forwarded Maddox's complaints and vital

information to the provider, who recommended Maddox "elevate the affected area,"

"avoid sleeping in an upright position," and to continue to take the eye drops.  (*Id.*)  The

message stated, "No transport to emergency facilities is necessary at this time."  (*Id.*)

On January 7, 2020, Maddox was evaluated by Dr. Michael Eichler, another

physician at Total Eye Care.  (*See* Defs.' Ex. B [ECF No. 26-1].[5])  Dr. Eichler also

---

[5]     Defendants Erickson and Eichler have attached three exhibits to their Motion to
Dismiss.  Defendants' Exhibit A is a copy of Plaintiff's medical records from his visit to
Total Eye Care on December 28, 2019; it is identical to Plaintiff's Ex. 7-X except
Defendants' exhibit has a sticker in the top right corner with Plaintiff's biographical
information.  (*Compare* Defs.' Ex. A [ECF No. 26-1 at 2] *with* Pl.'s Ex. 7-X [ECF No. 1-
1 at 7].)
        Defendants' Exhibit B is an Ophthalmology Consult note signed by Dr. Eichler on
January 7, 2020, which indicates Plaintiff should be referred to a Retinal Specialist.
[ECF No. 26-1 at 5.]  Generally, on a Rule 12(b)(6) motion, a court may not consider
matters outside the pleadings in assessing the sufficiency of a complaint.  *Porous Media
Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (citations omitted).  However, a
court may make exceptions to this rule for matters of public record, materials
"necessarily embraced by" the complaint, and exhibits submitted with the complaint.  *Id.*
(citations omitted).  The Court determines that Defendants' Exhibit B is necessarily
embraced by the Complaint, since Plaintiff's Complaint states that Dr. Eichler referred
Plaintiff to a Retinal Specialist.  (*See* Compl. at 11.)
        Defendants' Exhibit C is copy of a note from Plaintiff's medical charts, dated
January 8, 2020, documenting a conversation between prison officials and, the Court

diagnosed Maddox as having a dislocated lens in his right eye. (*Id.*) Dr. Eichler found no evidence of inflammation or infection, but he reported that Maddox needed a "Referral to a Retina Specialist" and identified the Retina Center in Maplewood. (*Id.*; *see also* Compl. at 11.)

Maddox's claims against Dr. Erickson are for his "medical errors [and] indifference," namely, his "[failure] to list Maddox's proper medications" before prescribing the eye drops. (Compl. at 11.) Maddox blames this failure for the "adverse reaction" he experienced, which led to "sever[e] pain [and] swelling." (*Id.*) Maddox's claim against Dr. Eichler is that he "(denied) Maddox to see a Retinal Specialist until Maddox leaves Chisago Cty Jail?? Why? Because, (subterfuge) and (deception)." (*Id.*) Maddox alleges Dr. Eichler thereby provided "grossly inadequate or incompetent care." (*Id.*)

Maddox also attributes his eye issues to prison staff. He appears to allege his eye issues were caused by the medical treatment ("prognosis") of Josh Cather, a Registered Nurse at the jail. (*See* Compl. at 8.) Maddox also attributes some of his issues to Sandi Lehman, a Registered Nurse Manager, and Matthew Meskan, an Assistant Regional Nurse Manager, whom Maddox describes as Cather's "medical-bosses." (*Id.*) Maddox

---

infers, a representative from Total Eye Care. [ECF No. 26-1 at 8.] The Court believes this exhibit is likely also embraced by the Complaint, but need not make that determination because it does not rely on Defendants' Exhibit C in making its recommendation.

alleges Meskan and Lehman told him to "wait" until he was "out of jail" to see a Retinal Specialist because there was "no emergent need." (*Id.*)

### B.    Upper Respiratory Infection

In his December 30, 2019, grievance message, Maddox named Cather and Lehman as having been negligent in rendering him medical care for a variety of medical issues, including an upper respiratory infection. (Compl. Ex. 2-X.) He elaborated:

> [M]addox begged medical-staff To do an culture slide to determine infection No josh gave it almost six weeks before he gave anti-biotics and when Maddox said antibiotcs were finished he still had infection?? Josh-rn said by some halls-cough drops-off-canteen?? Now Lack of proper prognosis by josh and medical director

(*Id.*) In his Complaint, Maddox states that Cather gave an improper "prognosis of Maddox's upper-respiratory infection," which he believes led to his alleged pain and infection in both eyes, cataracts, and Aphakia diagnosis. (Compl. at 8.)

### C.    Back Pain

Maddox's December 30, 2019, grievance message also raised several complaints related to back pain, alleging "spinal-stenosis, low back degenerative [disc] sever[e]." (Compl. Ex. 2-X.) Meskan responded to Maddox's message the next day stating, in relevant part, that his "back complaints have been evaluated by the practitioner and no changes will be made to your treatment plan." (*Id.* at 2.) Maddox responded to that message the same day claiming that Cather "refuses to my proper request for extra blanket and thinks my back pain is an joke?" (*Id.*) Maddox also stated he has his "own professional doctors" who the jail could contact in order to obtain information about Maddox's "spinal-stenosis-prognosis." (*Id.*)

In later communications Maddox names both Cather and Sergeant Lucas Anderson as having been neglectful of his back problems and states that he told Anderson he "need[ed] [a] chair to sit down in my unit c-107 to use kiosk to reply to message," but apparently did not receive one.  (*See* Compl. Ex. 3-X [ECF No. 1-1 at 4].)  In his Complaint Maddox specifically alleges that Anderson "faile[d] to address Maddox's Back-Pain [and] neck, that were listed on Maddox's Jail-intake."  (Compl. at 9.)  He also states that Cather refused to give him a medical pillow for his spinal stenosis.  (*Id.* at 8.)

### D.    Racial Discrimination

In addition to his medical complaints, Maddox alleges he was the victim of racial discrimination while in prison.  Specifically, he claims that Cather violated the Fourteenth Amendment by "(Refusing) to give (Maddox) who is (Black) a Pillow for his- "Spinal-Stenosis" condition and gave (white) Inmate a Pillow in cell-c-108, next to Maddox?? Who was in cell for only one-week?? Check-Record's Maddox has been in cell-109, for over (4) month's??"  (Compl. at 8.)

The Complaint also alleges Sergeant Richard Benson retaliated against Maddox and engaged in racial discrimination.  This claim is reflected in one of Maddox's grievance communications, in which he complained, "Also need medical approval for extra blanket for back pain and also medical permission for officer benson who Is also Useing subtle racial overetone to write up maddox while overlooking white inmate."  (Compl. Ex. 2-X.)  His message received a response from a jail administrator the next day with the following information:

> Cell inspections were completed in all cells in Pod C on 11/29/2019.  During
> the search of your assigned cell, staff located an extra blanket, an extra flexi-
> pen, and excessive loose toilet paper estimated to be the equivalent to 4–5
> rolls.  You received a verbal warning about hoarding from CO Benson for
> the infractions.  At the same time, CO Benson gave verbal warnings to 7
> other inmates in the pod for similar violations.

(*Id.* at 2.)  The communication went on to encourage Maddox to "provide additional

details, such as specific statements that were made, to substantiate the claim of racial

bias," so that they could be looked into further.  (*Id.*)  On January 5, 2020, Maddox sent a

follow-up communication providing "two small examples of [retaliation] and racial-bias

from your staff."  (Compl. Ex. 5-X [ECF1-1 at 6].)  He then stated:

> on,date of 1-2-20, time-5.37.p.m. – check video for "proof"?? "white" inmate
> comes out his room in main-day-room with brown sheet to sit on in day-room
> And sit onit to watch t.v.?? No one said anything??  Maddox who is "Black"-
> was given "two" – Verbal-warnings? One by sgt. Benson ,I forgot other
> officr??  Check-records, so, mr. grey heres partial-proof -of retailiation.,
> Example -two- inmate roger palme told Maddox when sgt.benson conducted
> shake—down 12-29-19  He gave plame verbal warning for have 3or4
> complete uniforms and did not even take them?? But when maddo had extra-
> blanket which was in his intake-issue and extra toilet-paper and extra paper-
> towels and pen he was [accused] of hording ??  Check out maddoxs grievance
> about other warnings benson gave the racial-imbalances-shows??.

(*Id.*)

Maddox received a responsive communication from Captain Armistead of the

Chisago County Sheriff's Office the following day stating he "did not find retaliation or

racial bias in either instance."  (*Id.*)  Captain Armistead elaborated that different officers

respond to minor infractions in different ways, saying "Some will write inmates up for

the small violations and others will not.  Some may catch something that others do not."

(*Id.*)  Armistead stated that in the cases of the cell inspections, everyone was treated

similarly, saying, "items not authorized were put in a pile, the inmates received verbal

warnings, and items confiscated." (*Id.*)  In the case of the inmate who brought a sheet to

sit in the day room, Armistead suggested that "the incident may not have been caught by

the staff so not addressed." (*Id.*)  In both cases, Armistead concluded, "Neither incident

showed any kind of racial bias." (*Id.*)  He also went on to remind Maddox that "other

inmates may tell you things that may not be true." (*Id.*)

### E.    Legal Access

Maddox alleges Benson opened two pieces of correspondence directed to Maddox

that contained "legal mail." (Compl. at 9.)  The first was from the "Federal Office of the

Clerk, which was stamped: 'Legal-mail open in the presence of Inmate' and letter was

stamped on (Front) and (Back)." (*Id.*)  The second was "from the State MN, Law-

Library." (*Id.*)

Finally, the Complaint includes the following allegation as to Anderson: "SGT.

"took" Handbook, [illegible] to keep attorney from reporting to Courts, "denying"

Maddox legal-material's to the Courts?" (*Id.*)  There are otherwise no factual claims

regarding a handbook.

## II.    STANDARD OF REVIEW

Two of the three motions—those brought by Defendants Erickson and Eichler and

by Defendants Cather, Lehman, and Meskan—seek dismissal under Federal Rule of Civil

Procedure 12(b)(6).  On a motion to dismiss brought pursuant to Rule 12(b)(6), the Court

"must take the well-pleaded allegations of the complaint as true, and construe the

complaint, and all reasonable inferences arising therefrom, most favorably to the

pleader." *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

Anderson and Benson's motion seeks judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Rule 12(c) allows a party to move for judgment on the pleadings at any time after the pleadings are closed, so long as trial will not be delayed as a result. Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss. *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009).

A court has the duty to construe liberally a pro se party's pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that even if a claim "is not pleaded with legal nicety," a court should construe the allegations so that the claim may "be considered within the proper legal framework." *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004). The court should not, however, "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." *Id.* Nor should a

court "assume the role of advocate." *Sneh v. Bank of N.Y. Mellon*, Case No. 12-cv-954

(MJD/JSM), 2012 WL 5519690, at *5 (D. Minn. Oct. 30, 2012) (quoting *Barnett v.*

*Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999)), *adopted by* 2012 WL 5519682 (D. Minn.

Nov. 14, 2012).

## III.    DISCUSSION

### A.    Drs. Erickson and Eichler's Motion to Dismiss

Maddox alleges Dr. Erickson committed "medical errors [and] indifference" in

proscribing the eye drops, which caused Maddox to experience an "adverse reaction,"

including "sever[e] pain [and] swelling." (Compl. at 11.)  Maddox's claim against Dr.

Eichler is that he provided "grossly inadequate or incompetent care," apparently by

indicating that Maddox could wait to see a Retinal Specialist on a non-emergency basis.

(*Id.*)  The Court construes these to be claims under the Eighth Amendment that Drs.

Erickson and Eichler were deliberately indifferent to Maddox's serious medical needs.

Maddox sues Drs. Erickson and Eichler under 42 U.S.C. § 1983.  (*See* Compl. at 1.)

In order to make out a § 1983 claim, a plaintiff must allege that the defendants acted "under

color of state law," such that they "exercised power possessed by virtue of state law and

made possible only because the wrongdoer is clothed with the authority of state law."

*West v. Atkins*, 487 U.S. 42, 49 (1988) (internal citations omitted).

The Complaint does not include a specific allegation that either Dr. Erickson or Dr.

Eichler acted under color of state law.  Instead, it appears to acknowledge that Drs. Erickson

and Eichler are private physicians at Total Eye Care, a private medical facility in Wyoming,

Minnesota.  (*See* Compl. at 7.)  There is no allegation that either doctor or that Total Eye

Care is affiliated with Chisago County Jail, such as by being under contract with the state to provide such medical services.  Absent specific allegations stating a plausible claim that Dr. Erickson or Dr. Eichler acted under color of state law, Maddox fails to state a claim against either of them.  *See Bevins v. Becker Cty., Minn.*, Case No. 16-cv-4340 (NEB/BRT), 2018 WL 7247176, at *10 (D. Minn. Oct. 30, 2018), *report and recommendation adopted by* 2019 WL 397322 (D. Minn. Jan. 31, 2019) (granting summary judgment where  the plaintiffs were treated at a private medical facility on an as-needed basis by physicians who "exercised independent medical judgment"); *Griffis v. Medford*, Case No. 05-cv-3040, 2007 WL 2752373, at *6 (W.D. Ark. Sept. 20, 2007) ("Similarly, we believe a private physician treating an inmate at a private facility utilizing his independent medical judgment is not answerable to the state and does not act under color of state law for purposes of § 1983.").

But even if the Court assumes Drs. Erickson and Eichler are state actors, Maddox's claims against them would still fail.  In order to state a cognizable Eighth Amendment claim regarding treatment of a medical condition, a prisoner must plausibly allege acts or omissions that show deliberate indifference to serious medical needs.  *Estelle*, 429 U.S. at 106; *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993).  In the context of a claim of inadequate medical care, the prisoner must allege more than medical negligence.  *See Givens v. Jones*, 900 F.2d 1229, 1232 (8th Cir. 1990).  The "deliberate indifference to a serious medical need must rise to the level of an unnecessary and wanton infliction of pain."  *Jorden v. Farrier*, 788 F.2d 1347, 1348 (8th Cir. 1986).  Failure to treat a medical condition is not improper under the Eighth Amendment unless prison officials knew that

12

the condition created excessive risk to the prisoner's health and then failed to act on that knowledge. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (*citing Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996)).

Maddox's allegation against Dr. Erickson—that he prescribed eye drops which allegedly caused Maddox to experience "sever[e] pain [and] swelling"—does not rise to the level of an unnecessary and wanton infliction of pain. Even if the Court takes that assertion as true, it concludes that, at most, Maddox states a claim for medical negligence, which is not enough to make out an Eighth Amendment violation.

Maddox's claim against Dr. Eichler is even weaker, in that he faults Eichler for indicating that Maddox did not have an emergency need to see a Retinal Specialist. (Compl. at 11.) There is nothing in the Complaint to suggest Dr. Eichler's conclusion was unsupported, let alone evinced a deliberate indifference to Maddox's serious medical needs. Nor does the Complaint allege that Maddox's condition was exacerbated by the claimed delay or deficiency in his treatment. Accordingly, the Court concludes that even if these Defendants were considered state actors for the purposes of Maddox's § 1983 claim, Maddox has still failed to state a claim against them. The Court therefore recommends that their Motion to Dismiss be granted.

### B.    Cather, Lehman, and Meskan's Motion to Dismiss

Maddox makes several claims relating to Cather, Lehman, and Meskan, alleging both Eighth Amendment and Equal Protection violations.

First, Maddox states that Cather made an "improper" "prognosis of Maddox's upper-respiratory infection,"[6] which he seems to allege caused him pain and infection in both eyes, cataracts, and Aphakia.  (Compl. at 8.)  In a grievance communication Maddox attached to the Complaint, he states that he "begged medical staff" to do a culture slide, that Cather "gave it almost six weeks" before he offered Maddox antibiotics to treat the infection, that those antibiotics were not totally effective, and that Cather told Maddox to buy cough drops at the jail canteen.  (Compl. Ex. 2-X.)

To the extent Maddox's claim is founded upon his statements in his grievance communication, contending that his upper respiratory infection received inadequate treatment or went untreated, the Complaint does not plead sufficient facts to plausibly allege Cather's deliberate indifference to a *serious* medical condition.  *See Estelle*, 429 U.S. at 106.  A medical condition constitutes a serious medical need when it has been so diagnosed by a physician or is "so obvious even a layperson would recognize the necessity for a doctor's attention."  *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir. 1991).  Courts have regularly found that an upper respiratory infection—a cold—is not a serious medical condition.  *See Martinson v. Leason*, 22 F. Supp. 3d 952, 963 (D. Minn. 2014) (listing cases).  Maddox alleges nothing about his condition or symptoms to suggest that they were particularly severe, or that it was obvious he needed additional or more urgent medical attention.  *See id.* at 964 (questioning whether even the addition of "diarrhea and

---

[6]     "Upper respiratory infection" or "URI" is a medical term often used to refer to the common cold.  *See Upper Respiratory Infection (URI or Common Cold)*, Johns Hopkins Medicine, https://www.hopkinsmedicine.org/health/conditions-and-diseases/upper-respiratory-infection-uri-or-common-cold.

a bloody cough on top of cold symptoms" would amount to a serious medical condition). Because Maddox alleges no facts to support a conclusion that his upper respiratory infection constituted a serious medical condition, let alone that Cather subjectively knew of and deliberately disregarded the seriousness of the condition, Maddox does not state an Eighth Amendment claim on this point.

Insofar as Maddox claims Cather's actions or omissions caused him to suffer pain and infection in both eyes, cataracts, and Aphakia, nothing in the Complaint plausibly alleges that those conditions in fact were caused by Maddox's upper respiratory infection, or that Cather knew that failure to take additional steps to respond to the upper respiratory infection would cause those conditions. A plaintiff's self-diagnosis alone cannot establish that he suffers from a serious medical need. *See Smith v. United States*, Case No. 13-cv-3277 JRT/LIB, 2015 WL 278252, at *13 (D. Minn. Jan. 22, 2015) ("The Eighth Circuit has long held that a Plaintiff's self-diagnosis does not establish the existence of medical problems when the medical evidence is to the contrary.") (*citing Hammond v. Delano*, 69 F.3d 541 (8th Cir. 1995)). Even when read in the light most favorable to Maddox, the Court cannot conclude this allegation states a claim under the Eighth Amendment.

The Court also reads Maddox's Complaint as alleging that the treatment he received for his eye issues violated the Eighth Amendment. Specifically, Maddox argues that Cather and "his medical bosses" Lehman and Meskan told him he could wait to see a retinal specialist until after he was out of jail because there was "no emergent need." (Compl. at 8.) However, Maddox does not allege that the delay caused any exacerbation

15

of his condition or impaired his chances of recovery, let alone that Cather, Lehman, or Meskan *knew* that a delay in seeing a retinal specialist would harm Maddox.  On the contrary, Maddox's Complaint alleges it was Dr. Eichler—not Cather, Lehman, or Meskan—who made the determination that Maddox's referral to a retinal specialist was not an emergency.  (*See* Compl. at 11 ("Dr. Eichler (denied) Maddox to see a Retinal-Specialist Until Maddox leave's Chisago Cty Jail?? Why? Because, (Subterfuge) and (deception) . . .").)  Staff who are not themselves medical specialists are entitled to rely upon the treatment decisions of specialists.  "[I]t is not deliberate indifference when an official relies on the recommendations of a trained professional." *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006); *see also Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002) (concluding a defendant who "function[ed] in an administrative role" and "was not responsible for examining [the plaintiff] or treating him" was not "personally involved in an Eighth Amendment violation.")  Maddox's claim is, at best, a disagreement with Dr. Eichler's course of treatment, and "mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).

Next, Maddox alleges Cather violated the Fourteenth Amendment's Equal Protection clause by "(Refusing) to give (Maddox) who is (Black) a Pillow for his-"Spinal-Stenosis" condition and gave (white) Inmate a Pillow in cell-c-108, next to Maddox?? Who was in cell for only one-week?? Check-Record's Maddox has been in cell-109, for over (4) month's??"  (Compl. at 8.)

"The Equal Protection Clause generally requires the government to treat similarly situated people alike." *Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994) (citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)). The first step in an Equal Protection case is to determine whether the claimant has shown different treatment than others similarly situated. *Id.* That is, "[a]bsent a threshold showing that [he] is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim." *Id.* But here, as elsewhere, there is no factual support for this claim, so it is insufficiently pleaded. Nowhere does Maddox assert facts that raise above the speculative level an assertion that his medical needs were similar to those of the white inmate.[7]

Finally, Maddox seems to attribute some liability to Defendants Lehman and Meskan on the basis of their alleged supervisory role over Cather. (*See* Compl. at 8 ("Maddox gave Reasonable-Notice of his (Condition) thru (numerous) grievances, namely: (1): Sandi Lehman, Regional Nurse Manager (ACH), Provider of: Advanced Correctional Healthcare, Also: (2): Matthew J. Meskan, Assist, Regional Nurse Manager (ACH). Supervisor's (Incur's) liability when Personally involved in 8th Amend, Violation or when corrective (inaction) constitutes, "deliberate-indifference.").") Individuals cannot be held vicariously liable under § 1983 for the actions of their subordinates. *L.L. Nelson Enter., Inc. v. Cty. of St. Louis, Mo.*, 673 F.3d 799, 810 (8th Cir. 2012). "To state a claim, the plaintiff must plead that the supervising official, through his own individual

---

[7]     The length of time the two individuals were in their respective cells is not relevant for ascertaining whether they were similarly situated with regard to their medical needs.

actions, has violated the Constitution." *Id.* "A bare allegation that someone in supervisory authority has been deliberately indifferent, without any specification of that person's contact in fact with the plaintiff, or even an explicit charge of inadequate training or supervision of subordinates, is not sufficient to state a § 1983 claim." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1030–31 (8th Cir. 2012) (citing *Rosenberg*, 56 F.3d at 37). Accordingly, to the extent Maddox alleges only that Lehman and Meskan are liable for their failure to adequately supervise their subordinates, Maddox fails to state a § 1983 claim. The conclusory allegation that their failure to respond to Maddox's grievances against Cather constituted "deliberate-indifference" does not plausibly allege facts from which the inference can be drawn that they knew of a serious medical need, knew that it was not being adequately addressed, and were deliberately indifferent to it. Indeed, the grievance communications Maddox attached to the Complaint document a great deal of medical care and indicate that his care providers attempted to respond to his medical issues and complaints, even if they did not always respond with the treatment he would have preferred. [*See* ECF No. 1-1.]

The Court therefore concludes that all claims against Defendants Cather, Lehman, and Meskan should be dismissed pursuant to Rule 12(b)(6).

### C.    Anderson and Benson's Motion for Judgment on the Pleadings

The third motion before the Court is Anderson and Benson's Motion for Judgment on the Pleadings under Rule 12(c).

In his Complaint, Maddox alleges that Benson retaliated against him and engaged in "different treatment of Black's vs. Whites's Inmates." (Compl. at 9; *see also* Compl.

Ex. 2-X (grievance in which Maddox stated Benson was "Useing subtle racial overetone to write up maddox while overlooking white inmate"). Maddox describes a particular incident in two separate grievance communications he exchanged with jail authorities: an encounter in which Benson searched Maddox's cell and discovered Maddox was "hoarding" supplies, including an extra blanket and loose toilet paper. (Compl. Ex. 5-X; *see also* Compl. Ex. 2-X.) Maddox contends he was treated differently than another inmate in a similar "shake down," where, according to Maddox, the other inmate had multiple "complete uniforms" in his possession, but Benson did not confiscate the uniforms and only issued the inmate a "verbal warning." (Compl. Ex. 5-X.) Maddox raises the disparate treatment as an example of retaliation and racial bias.

Both grievance communications include a response from jail officials. In the first, "J. Gray #1348" notes that on the same day that Benson gave Maddox a "verbal warning about hoarding," he also issued "verbal warnings to 7 other inmates in the pod for similar violations." (Compl. Ex. 2-X.) In the second, Captain Armistead of the Chisago County Sheriff's Office reiterates that other inmates received verbal warnings for having certain belongings in their cells. (Compl. Ex. 5-X.) He also reminds Maddox that every correctional officer is different in terms of their response to infractions, saying, "[s]ome will write inmates up for the small violations and others will not. Some may catch something that others do not." (*Id.*)

The Court reads these allegations in the light most favorable to Maddox. But even if the Court assumes for the sake of argument that Maddox was treated differently than other inmates who had committed similar infractions—although that is not at all clear,

given the representations in the grievance communications—the Complaint does not

plausibly allege a retaliatory or discriminatory motive for those actions.  Maddox asserts

that he was the victim of a retaliatory or racially motivated action, but there are a number

of possible explanations for why two seemingly similar infractions might be handled

differently.

Importantly, Federal Rule of Civil Procedure 8 requires that Plaintiff's claims be

*plausible*, not just *possible.  Iqbal*, 556 U.S. at 678.  Put another way, it is not sufficient

that Plaintiff alleges facts—*i.e.* he was written up for an infraction and another inmate

was not—that are merely consistent with Benson's liability.  If the Complaint only

"pleads facts that are merely consistent with a defendant's liability, it stops short of the

line between possibility and plausibility of entitlement of relief."  *Id.* (internal quotations

omitted.)  Maddox has alleged no facts that, if presumed true, would tend to make it more

likely than not that Benson's reprimand to Maddox was retaliatory or discriminatory in

motive.  Benson's motion should be granted as to this claim.

Maddox also makes two claims pertaining to Benson and Anderson's actions

around sensitive legal materials.  First, the Complaint alleges that Benson opened two

pieces of legal mail, a letter from the "Federal Office of the Clerk" which indicated it

contained legal materials, and a correspondence from the "State MN, Law Library."

(Compl. at 9.)  The Complaint elsewhere states that Anderson "took" a "handbook" to

"keep attorney from reporting to courts," which, Maddox alleges, amounted to "denying

Maddox['s] legal materials to the courts."  (*Id.*)  The Court construes both as allegations

of a First Amendment violation, since "[i]nterference with legal mail implicates

a prison inmate's right to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). "A prison policy that obstructs privileged inmate mail can violate inmates' right of access to the courts." *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998).

However, "an isolated, inadvertent instance of opening incoming confidential legal mail" will not support a § 1983 damage action unless there is "evidence of improper motive or resulting interference with the inmate's right to counsel or access to the courts." *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997).

> The act of opening incoming mail does not injure an inmate's right to access to the courts. The policy that incoming confidential legal mail should be opened in inmates' presence instead serves the prophylactic purpose of assuring them that confidential attorney-client mail has not been improperly read in the guise of searching for contraband.

*Id.* Maddox alleges two separate instances in which Benson opened legal mail. There is no allegation that either instance was intentional, that Maddox's mail was withheld or damaged in any way, or that Maddox's ability to access the courts was interfered with as a result. The allegation that Anderson "took" a "handbook" to keep Maddox's "attorney from reporting to courts" suffers from similar defects. It is not at all clear why the "handbook" was necessary to Anderson's legal case or should even be considered legal material at all. Maddox conclusorily asserts that Anderson interfered with the transmission of the handbook to Maddox's attorney in order to keep him "from reporting to the courts," but that allegation is not supported by any factual allegations. Benson and Anderson are entitled to judgment on the pleadings as to both claims.

Finally, Maddox alleges that Anderson exhibited "medical indifference to proper medical care" and "fail[ed] to address Maddox's back [and neck pain]."  (Compl. at 9.) This allegation has no further factual support in the Complaint itself, but in the attached grievance communication, Maddox claims he told Anderson:

> i think i am having an adverse reaction to eye -drops prescribed by dr. Gunnar or the fairview medical-staff in wyoming, --county also Reported to fairview medical staff over 5-times that I want to place medical abuse against the whole medical team in chisago county jail-namely – you rn-josh sather and regional-medical-director?? Now later on med pass i told sgt.anderson that my scrotum had swelled-up the size of an grapefruit?? He  Said he called nurse practitioner and she proscribed Maalox   ??   And some green pill hydrozine?? I told sgt. Anderson i don't have an stomach ache is she -serious and what is the hydrazine for sgt stated i don't know what do a look like an doctor-maddox said what you dispensing meds which you have no-knowledged of ?? What if it kills me he just stood their looking  Stupid?? Medical-indifference to my proper medical—needs so sgt refused maddox request for emergency to hospital twice??

(Compl. Ex. 3-X [ECF No. 1-1 at 4].)

Insofar as Maddox sues Anderson for a purported failure to provide proper medical care, Maddox's claim does not withstand scrutiny.  First, there is no indication in the Complaint that Anderson had any medical training nor that he was responsible for Maddox's health care.  But in order to make out a claim under *Bivens*, Plaintiff "must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution."  *Iqbal*, 556 U.S. at 676 (emphasis added).  Just because Anderson relayed the nurse practitioner's prescription does not make him liable for Maddox's treatment.  As discussed above, an official may rely on the recommendations of a trained professional.  *Koss*, 445 F.3d at 1042 (8th Cir. 2006); *Meloy*, 302 F.3d at 849.  Here, nothing in the Complaint plausibly alleges that Anderson

denied Maddox medical treatment or otherwise interfered with Maddox's prescribed treatment.

In short, there is nothing in Plaintiff's Complaint that plausibly alleges that Anderson was deliberately indifferent to Plaintiff's needs. The Court therefore recommends that Anderson's motion for judgment on the pleadings be granted as to the claims against him.

## V. RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants Gunnar Erickson, M.D. and Michael Eichler, M.D.'s Motion to Dismiss [ECF No. 23], Defendants Josh Cather, Sandi Lehman, and Matthew J. Meskan's Rule 12(b)(6) Motion to Dismiss [ECF No. 38], and Defendants Sgt. Lucas Anderson and Sgt. Richard Benson's Motion for Judgment on the Pleadings [ECF No. 47] be **GRANTED** and that all of Plaintiff's claims against Defendants be **DISMISSED**.

 Dated: December 1, 2020                    *s/ Hildy Bowbeer*_____
                                            HILDY BOWBEER
                                            United States Magistrate Judge


### NOTICE

Filing Objections: This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. See LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).